UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE BENARD WASHINGTON, | Case No. CV 19-169-VAP (KK) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, ET AL., | |
| Defendants. | |

**I.**

**INTRODUCTION**

Plaintiff Tracye Benard Washington ("Washington"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act. For the reasons discussed below, the Court dismisses the Complaint with leave to amend.

///
///
///
///

## II.

## **ALLEGATIONS IN THE COMPLAINT**

On January 3, 2019, Washington constructively filed[1] a Complaint against the California Department of Corrections and Rehabilitation ("CDCR") and various correctional officers at California State Prison – Los Angeles County ("CSP-LAC"), where Washington was housed at the time of the incidents giving rise to the Complaint. ECF Docket No. ("Dkt.") 1. Washington appears to sue defendants J. Hanks, O. Romo-Munoz, Pressnell, E. Burkhouse, Figueroa, A. Lizama, G. Hernandez, W. Wingfield, C. King, and John Does[2] 1-3 in their individual capacity, and defendants Warden Debbie Asuncion, Rosales, M. Tamayo, and John Doe 4 in both their individual and official capacities (collectively with CDCR, "Defendants"). Id.

**A. JULY 25, 2018 INCIDENT**

Washington alleges on July 25, 2018, he was escorted by defendants Hernandez and Wingfield to the Facility D Enhanced Outpatient Administrative Segregation Unit ("ASU"). Dkt. 1 at 11. Washington was upset there were no electrical outlets in his cell for his radio, so he "began banging on the metal door and window calling out to the guards[;] . . . then used his walking cane and struck the rear window causing it to

---

[1] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits filed by pro se prisoners").

[2] "As a general rule, the use of 'John[/Jane] Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Because Washington is unaware of the true names of the unnamed Doe defendants, Washington will be given the opportunity to discover the names of the Doe defendants after he files a complaint curing the deficiencies identified in this Order. Washington is cautioned that, if he is unable to timely identify the Doe defendants, the claims against the Doe defendants will be subject to dismissal because the Court will not be able to order service against defendants who are unidentified. See Augustin v. Dep't of Public Safety, 2009 WL 2591370, at *3 (D. Hawai'i Aug. 24, 2009); Williams v. Schwarzenegger, 2006 WL 3486957, at *1 (E.D. Cal. Dec. 1, 2006).

1  crack." Id. at 13.  Defendant Hernandez came to Washington's cell door and
2  informed him defendant Sergeant Tamayo had approved a cell move.  Id.
3    At approximately 1:00 p.m. that day, defendant Hanks secured Washington in
4  restraints through the food-port, Washington grabbed his cane to stabilize himself,
5  and the cell door was opened.  Dkt. 1 at 14.  Defendants Hanks and Romo-Munoz
6  placed a hand around each of Washington's arms and pulled him backwards out of
7  the cell.  Id.  Defendant Hernandez approached Washington from behind and
8  "grabbed his walking cane out of his grip and walked away."  Id.
9    Defendants Hanks and Romo-Munoz escorted Washington to cell 144 in
10  Section C of the housing unit.  Dkt. 1 at 15.  Defendants Hernandez, Lizama, and
11  Pressnell were standing in front of cell 144.  Id.  Defendant Burkhouse, who was the
12  ASU control booth officer at the time, began closing the cell door.  Id.  At the same
13  time, defendants Hanks and Romo-Munoz "began nudging [Washington] towards the
14  closing cell door."  Id.  The door shut, pinning Washington in the door frame with his
15  left leg stuck in the door for "nearly one minute."  Id. at 16-17.  Defendants Hanks,
16  Romo-Munoz, Pressnell, Hernandez, and Lizama stood at the cell door "laughing and
17  cursing" at Washington.  Id.
18    When the door opened, as Washington was attempting to regain his balance,
19  Washington was "snatched forward out of the cell" and defendant Lizama hit
20  Washington in the left temple with "a closed glove fist."  Dkt. 1 at 17.  Defendants
21  Hanks and Romo-Munoz "slammed [Washington] to the concrete pavement head
22  first."  Id.  Washington briefly lost consciousness and awoke to being kicked in the
23  back.  Id.  As two unidentified officers pulled Washington to a wheelchair to put him
24  in his cell, a psychiatric technician approached and directed medical staff to take
25  Washington to the medical clinic.  Id. at 18.  Washington was then transported to
26  Antelope Valley Hospital.  Id.
27  **B. ANTELOPE VALLEY HOSPITAL INCIDENT**
28

While at Antelope Valley Hospital, defendant Figueroa denied medical personnel permission to take a statement from Washington, photograph his injuries, or obtain his social history or "other medically necessary information in order to adequately assess and treat him." Dkt. 1 at 19. Washington was diagnosed with Acute Flaccid Paralysis and discharged from the hospital on July 27, 2018. Id. Upon returning to CSP-LAC, Washington was issued a wheelchair. Id. at 20.

**C.     NOVEMBER 14, 2018 INCIDENT**

On November 14, 2018, defendant John Doe 1 came to Washington's cell to take him to an appointment. Dkt. 1 at 20. Defendant John Doe 1 opened the food-port to place restraints on Washington. Id. at 21. Washington wheeled himself over to the cell door and placed his hands through the food-port. Id. Defendant John Doe 1 secured the handcuffs on Washington's wrists and held the attached waist-chain. Id. Defendant John Doe 1 instructed Washington to stand up so he could secure the chains around his waist, but Washington told him he could not stand. Id.

Defendant John Doe 1 called out to the other officers in the area – defendants Rosales, Lizama, Hernandez, Wingfield, and King – who approached the cell. Id. at 22. Defendant John Doe 1 along with defendants Rosales, Lizama, Hernandez, Wingfield, and King then pulled the chains with enough force that Washington was "snatched out of his wheelchair, his entire arms going out of the food-port, his knees pinned to and being scraped in the cell door." Id. Washington was held in this position for approximately twenty seconds. Id. Defendants John Does 2 and 3 were nearby, but ignored Washington's yells for help. Id. Defendants finally released the chains and pushed Washington back onto his wheelchair. Id. Defendants Rosales, Wingfield, Hernandez, and King remained at Washington's cell door taunting him until Washington used his cane to crack his cell window, at which point they laughed and walked away. Id. at 24.

///

///

4

**D.     CAUSES OF ACTION AND REQUEST FOR RELIEF**

Based on these allegations, Washington lists the following thirteen causes of action:

(1)     Excessive force

(2)     Deliberate indifference to a serious medical need

(3)     Elderly abuse

(4)     Abuse of the mentally ill

(5)     Abuse of the disabled

(6)     Obstruction of justice

(7)     Violation of the Due Process Clause of the Fourteenth Amendment

(8)     Violation of the Eighth Amendment

(9)     Violation of Americans with Disabilities Act

(10)    Violation of Section 504 of the Rehabilitation Act

(11)    Failure to supervise

(12)    Failure to train

(13)    Failure to intervene

Dkt. 1 at 5. While it is not entirely clear which claims apply to each defendant, it appears (1) all defendants are sued for violations of the ADA and Section 504 of the Rehabilitation Act; (2) only defendant Figueroa is sued for obstruction of justice; (3) only defendants Figueroa and John Doe 4 are sued for deliberate indifference to medical need; (4) the failure to train and supervise claims apply to defendants CDCR, Asuncion, Rosales, and Tamayo; and (5) the excessive force, failure to intervene, and presumably the Eighth Amendment claims apply to defendants Hanks, Rosales, Romo-Munoz, Pressnell, Burkhouse, Lizama, Hernandez, Wingfield, King, and John Does 1, 2, and 3.

Washington seeks compensatory and punitive damages as well as an injunction requiring CDCR to (1) install audio/video surveillance at CSP-LAC in the ASU and (2) replace correctional officers in CSP-LAC's Mental Health Services Delivery

System and at the Enhanced Outpatient level of care with Medical Technical Assistants. Dkt. 1 at 25.

### III.
### **STANDARD OF REVIEW**

Where a plaintiff is a prisoner or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it

6

"allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

**IV.**

**DISCUSSION**

**A.  THE COMPLAINT FAILS TO COMPLY WITH RULE 8**

    **1.  Applicable Law**

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). "[T]he 'short and plain statement' must provide the defendant with 'fair notice of

what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005); McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (holding a complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief"). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. L.A. Cty., 216 F.3d 837, 841 (9th Cir. 2000).

Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must contain enough facts to "state a claim to relief that is plausible on its face," allowing the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**2. Analysis**

First, it is difficult to determine from the Complaint "who is being sued, for what relief, and on what theory". See McHenry, 84 F.3d at 1178. On page 5 of the Complaint, Washington lists thirteen causes of action. Dkt. 1 at 5. On pages 3-4 and 8-10, Washington lists Defendants and states what each is being sued for. Id. at 3-4, 8-10. However, some claims listed on page 5, such as "elderly abuse", are not mentioned elsewhere in the Complaint. Similarly, some claims listed with particular defendants on pages 3-4, such as "failure to protect", "discrimination", or "failure to report," do not appear on the list on page 5. In addition, the statement of facts mentions at least two unnamed officers in addition to the four doe defendants previously listed. Id. at 18. It is, therefore, unclear whether Washington intended to sue these two additional officers. See id.

Second, the statement of facts does not mention defendants Asuncion or John Doe 4. See dkt. 1 11-24. Therefore, Washington has failed to allege any facts that

8

could state a claim against defendants Asuncion or John Doe 4. See Twombly, 550 U.S. at 555 n.3.

Ultimately, the Court cannot determine (1) what claims Washington seeks to bring; (2) which defendants Washington seeks to sue; and (3) the underlying facts for each claim and defendant. Unclear pleadings, like the Complaint, that "leav[e] it to the Court to figure out what the full array of [Plaintiff's] claims is and upon what federal law, and upon what facts, each claim is based," are subject to dismissal. Little v. Baca, No. CV 13–0373-PA (RZ), 2013 WL 436018, at *3 (C.D. Cal. Feb. 1, 2013). As such, the Complaint is subject to dismissal for failure to comply with Rule 8. See McHenry, 84 F.3d at 1177. If Washington chooses to file an amended complaint, he must clearly identify the legal and factual basis for each defendant's alleged liability.

**B.     THE REQUEST FOR INJUNCTIVE RELIEF MUST BE STRICKEN**

**1.     Applicable Law**

"[A] court's equitable power lies only over the merits of the case or controversy before it." Pacific Radiation Oncology, LLC v. Queen's Medical Center, 810 F.3d 631, 633 (9th Cir. 2015). Without a "relationship or nexus [between the requested injunction and the harm alleged], the district court lacks authority to grant the relief requested." Id. at 636-37. Therefore, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." Id. at 633.

**2.     Analysis**

Washington requests that the Court issue an injunction requiring CDCR to (1) install audio/video surveillance at CSP-LAC in the ASU and (2) replace correctional officers in CSP-LAC's Mental Health Services Delivery System and at the Enhanced Outpatient level of care with Medical Technical Assistants. Dkt. 1 at 25. However, Washington does not allege a sufficient relationship or nexus between his claims and his requested injunctive relief. The underlying claim in the Complaint appears to be that Defendants violated Washington's Eighth Amendment rights, the ADA, and the

Rehabilitation Act when they used excessive force against him on two occasions. Dkt. 1 at 11-24. Washington does not allege these claims arose from a lack of video surveillance or Medical Technical Assistants, nor does he allege any "relationship or nexus" between his excessive force claims and the requested relief. See Pacific Radiation Oncology, 810 F.3d at 636-37. It is entirely speculative that video surveillance or medical training would have deterred or prevented the alleged assaults. Thus, because Washington fails to allege a sufficient relationship, the "court lacks the authority to grant the relief requested," and Washington's request for injunctive relief must be dismissed.

## C. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE ADA OR REHABILITATION ACT

### 1. Applicable Law

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity. Title II of the ADA and Section 504 of the Rehabilitation Act apply to inmates within state prisons. See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997). However, Title II of the ADA and Section 504 of the Rehabilitation Act only afford causes of action against public entities, and do not encompass public officials sued in their individual capacities.[3] 29 U.S.C. §§ 794, 794a; 42 U.S.C. § 12132; Miranda B. V. Kitzhaber, 328

---

[3] In the Ninth Circuit, state agencies are not entitled to Eleventh Amendment sovereign immunity from suit under Title II of the ADA. Phiffer v. Columbia River Correctional Institute, 384 F.3d 791, 792 (9th Cir.2004) (per curiam). As to the Rehabilitation Act, the Ninth Circuit has held that "[b]ecause California accepts federal funds under the Rehabilitation Act, California has waived any immunity under the Eleventh Amendment" as to that Act's anti-discrimination provisions. See Clark v. State of California, 123 F.3d 1267, 1271 (9th Cir. 1997).

F.3d 1181, 1187 (9th Cir. 2003); Roberts v. California Dep't of Corr. & Rehab., No. EDCV 16-1929 CJC (JC), 2017 WL 3635175, at *9 (C.D. Cal. Aug. 22, 2017).

To state a claim for violation of Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; (3) such exclusion or discrimination was by reason of his disability; and (4) for a Rehabilitation Act claim, the public entity receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

To recover monetary damages under the ADA, Plaintiff must show intentional discrimination on the part of state officials. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The test for intentional discrimination is deliberate indifference. Id. A defendant acts with deliberate indifference only if (1) the defendant has knowledge from which an inference could be drawn that a harm to a federally protected right is substantially likely, and (2) the defendant actually draws that inference and fails to act upon the likelihood. See id. at 1138-39.

**2. Analysis**

As an initial matter, "Title II of the ADA and Section 504 of the R[ehabilitation] A[ct] do not authorize claims against State officials in their individual capacities." Hayes v. Voong, 709 F. App'x 494, 495 (9th Cir. 2018)[4]; Roberts, 2017 WL 3635175, at *9. Therefore, the ADA and Rehabilitation Act claims against Defendants in their individual capacity are subject to dismissal.

In addition, Washington fails to allege facts showing intentional discrimination. Therefore, Washington cannot recover monetary damages under the ADA or Rehabilitation Act. See Duvall, 260 F.3d at 1138.

---

[4] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

11

Moreover, Washington does not appear to allege that he was denied the benefits of CDCR services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his disability. See, e.g., Hewitt v. Luis, No. 3:11-CV-00598-RCJ, 2013 WL 4702266, at *9 (D. Nev. July 2, 2013), report and recommendation adopted, No. 3:11-CV-00598-RCJ, 2013 WL 4710392 (D. Nev. Aug. 30, 2013) (finding confiscating plaintiff's cane for nine days could not support an ADA or Rehabilitation Act discrimination claim because plaintiff's claim sounded in medical negligence rather than discriminatory denial of services, programs, or activities). To the extent Washington seeks to sue Defendants for alleged inadequate healthcare under the ADA or Rehabilitation Act, such a claim fails as a matter of law. See Gordy v. Agamyan, No. CV 18-2590-GW (JPR), 2018 WL 3129779, at *4 (C.D. Cal. June 22, 2018); Figueira ex rel. Castillo v. Cnty. of Sutter, No. 2:15–cv–00500–KJM–AC, 2015 WL 6449151, at *8–9 (E.D. Cal. Oct. 23, 2015) (dismissing ADA/Rehabilitation Act claims arising from suicide of mentally ill inmate following allegedly inadequate health care in custody; noting that "[t]he defendants cannot have violated the ADA by failing to attend to the medical needs of disabled prisoners"). Hence, Washington's ADA and Rehabilitation Act claims are subject to dismissal.

**D. THE ELEVENTH AMENDMENT BARS ALL SECTION 1983 CLAIMS (1) AGAINST DEFENDANT CDCR OR (2) FOR MONETARY DAMAGES AGAINST DEFENDANTS ASCUNCION, ROSALES, TAMAYO, OR JOHN DOE 4 IN THEIR OFFICIAL CAPACITY**

**1. Applicable Law**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). This jurisdictional bar includes "suits naming state agencies and departments as defendants," and it applies

whether a plaintiff "seek[s] damages or injunctive relief." Id.; Pennhurst State School, 465 U.S. at 102. "[A]n entity with Eleventh Amendment immunity is not a "person" within the meaning of § 1983." Howlett By & Through Howlett v. Rose, 496 U.S. 356, 365, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990).

As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

**2.    Analysis**

Here, to the extent Washington seeks to sue CDCR, those claims are barred because CDCR is protected by the Eleventh Amendment and cannot be sued under Section 1983. See Brown v. California Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (affirming district court holding that CDCR is entitled to Eleventh Amendment immunity). In addition, to the extent Washington seeks to sue defendants Asuncion, Rosales, Tamayo, or John Doe 4, who are state employees, in their official capacity for monetary damages, the Eleventh Amendment bars such claims. See Kentucky v. Graham, 473 U.S. at 169–70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Thus, Washington's Section 1983 claims against CDCR and for monetary damages against defendants Asuncion, Rosales, or Tamayo in their official capacity are subject to dismissal.

///
///
///
///

13

## E. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT FIGUEROA

### 1. Applicable Law

Prison officials "violate the Eighth Amendment if they are 'deliberately indifferent to a prisoner's serious medical needs.'" Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (alterations omitted)); see also Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To assert a deliberate indifference claim, a prisoner plaintiff must show the defendant: (1) deprived him of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

"A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" Peralta, 744 F.3d at 1081 (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A prison official is deliberately indifferent to [a serious medical] need if he 'knows of and disregards an excessive risk to inmate health.'" Id. at 1082 (quoting Farmer, 511 U.S. at 837). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Deliberate indifference "requires more than ordinary lack of due care." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Farmer, 511 U.S. at 835). "Deliberate indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). In either case, however, the indifference to the inmate's medical needs must be substantial – negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (negligence constituting

medical malpractice is not sufficient to establish an Eighth Amendment violation). "The officials' conduct must constitute '"unnecessary and wanton infliction of pain"' before it violates the Eighth Amendment." Hallett v. Morgan, 296 F.3d 732, 744–45 (9th Cir. 2002) (citations omitted).

### 2. Analysis

Washington appears to allege only two claims against defendant Figueroa – obstruction of justice and deliberate indifference to a serious medical need.[5] Dkt. 1 at 9.

As an initial matter, "obstruction of justice is not a cognizable civil claim under state or federal law." Abelyan v. OneWest Bank, etc., No. CV-09-7163-CAS (AGRx), 2010 WL 11507582, at *5 (C.D. Cal. Sept. 27, 2010).

With respect to the deliberate indifference claim, Washington alleges defendant Figueroa prevented medical personnel from gathering background information necessary "to adequately assess and treat him." Dkt. 1 at 19. However, Washington does not allege he received inadequate treatment as a result of defendant Figueroa's actions. Therefore, Washington has failed to allege he was deprived of an objectively serious medical need. See Peralta, 744 F.3d at 1081.

Accordingly, Washington's claims for obstruction of justice and deliberate indifference to serious medical need against defendant Figueroa are subject to dismissal.

## V.

## **LEAVE TO FILE A FIRST AMENDED COMPLAINT**

For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is

---

[5] Defendant Figueroa is sued only in his individual capacity. Therefore, as discussed above, Washington cannot maintain claims against defendant Figueroa in his individual capacity for violations of the ADA or Rehabilitation Act.

advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1. Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. **The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.**

If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint. In addition, the First Amended Complaint must be complete without reference to the Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat

16

all preceding complaints as nonexistent. Id. **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.** Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261. Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.**

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: March 14, 2019

*/s/ Kenly Kato*
HONORABLE KENLY KIYA KATO
United States Magistrate Judge