1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9

10   TRACYE BENARD WASHINGTON,          Case No. CV 19-169-VAP (KK)

11              Plaintiff,

12        v.                            FINAL REPORT AND
                                        RECOMMENDATION OF UNITED
13   CALIFORNIA DEPARTMENT OF           STATES MAGISTRATE JUDGE
     CORRECTIONS AND
14   REHABILITATION, ET AL.,

15              Defendants.

16

17

18        This Final Report and Recommendation is submitted to the Honorable

19   Virginia A. Phillips, United States District Judge, pursuant to 28 U.S.C. § 636 and

20   General Order 05-07 of the United States District Court for the Central District of

21   California.

22                                   **I.**

23                   **<u>SUMMARY OF RECOMMENDATION</u>**

24        Plaintiff Tracye Benard Washington ("Plaintiff") proceeding <u>pro se</u> and <u>in</u>

25   <u>forma pauperis</u>, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. §

26   1983 ("Section 1983") alleging correctional officers at California State Prison – Los

27   Angeles County in Lancaster, California ("CSP-LAC") violated his Eighth

28   Amendment rights during incidents on July 25, 2018 and November 14, 2018.

1  Defendants Hanks, Romo-Munoz, Lizama, Hernandez, Wingfield, Rosales, and

2  Pressnell ("Defendants") filed a Motion for Summary Judgment ("Motion") on the

3  grounds Plaintiff failed to exhaust his administrative remedies.  For the reasons below,

4  the Court recommends Defendants' Motion be GRANTED IN PART and DENIED

5  IN PART.

6                                                    **II.**

7                                    **PROCEDURAL HISTORY**

8            On January 8, 2019, Plaintiff constructively filed[1] a civil rights complaint

9  ("Complaint") pursuant to Section 1983, Title II of the Americans with Disabilities

10  Act ("ADA"), and Section 504 of the Rehabilitation Act against California

11  Department of Corrections and Rehabilitation ("CDCR"), the warden of CSP-LAC,

12  and various correctional officers at CSP-LAC where Plaintiff was housed at the time

13  of the allegations giving rise to the Complaint.  See ECF Docket No. ("Dkt.") 1,

14  Complaint.  The Complaint alleged claims stemming from two incidents in July and

15  November of 2018.  Id.  On March 13, 2019, the Court dismissed the Complaint with

16  leave to amend.  Dkt. 9.

17            On April 1, 2019, Plaintiff constructively filed the FAC setting forth the

18  following remaining claims[2]:

19            (1) defendants Hanks, Romo-Munoz, Lizama, Hernandez, Wingfield, and

20                 Pressnell violated Plaintiff's Eighth Amendment rights by using excessive

21                 force against him on July 25, 2018 ("Claim One"); and

22

23

24

25  [1] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading
    to mail to court, the court deems the pleading constructively "filed" on the date it is
26  signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted);
    Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule
27  applies to § 1983 suits filed by pro se prisoners").

28  [2] On June 14, 2019, the Court issued an Order dismissing with prejudice Plaintiff's
    claims against defendants Hanks and Romo-Munoz in their official capacity.  Dkt. 19.

                                                      2

1        (2) defendants Rosales, Lizama, Hernandez, Wingfield, and Pressnell violated

2              Plaintiff's Eighth Amendment rights by using excessive force against him

3              on November 14, 2018 ("Claim Two").  Dkt. 12 at 5.

4        On December 11, 2019, Defendants filed the instant Motion arguing Plaintiff

5 failed to exhaust his administrative remedies and Defendants are entitled to judgment

6 as a matter of law.  Dkt. 49, Motion.

7        In support of the Motion, Defendants submit:

8          • Statement of Uncontroverted Facts and Conclusions of Law, dkt. 51

9            ("SUF");

10         • Request for Judicial Notice,[3] dkt. 52;

11         • Declaration of H. Liu, Acting Chief of Office of Appeals ("OOA") for

12            the California Department of Corrections and Rehabilitation ("CDCR"),

13            dkt. 53 ("Liu Decl."); and

14         • Declaration of A. Ojeda, Correctional Counselor and Appeals

15            Coordinator for CSP-LAC, dkt. 54 ("Ojeda Decl.")[4]

16        On December 11, 2019, the Court issued an Order notifying Plaintiff of the

17 requirements for opposing a motion for summary judgment pursuant to Rand v.

18 Rowland, 154 F.3d 952 (9th Cir. 1998).  Dkt. 55.

19        On March 2, 2020, Plaintiff constructively filed an Opposition attaching

20 various documents, including copies of his grievances and the OOA's third level

21 decisions regarding the July and November 2018 incidents.  Dkt. 61, Opp. [5]  In his

22

---

23 [3] Defendants request the Court take judicial notice of CDCR inmate appeal
regulations, set forth in Title 15 of the California Code of Regulations, Sections 3084
24 through 3086, updated through June 1, 2018.  Dkt. 52.  Defendants' Request for
Judicial Notice is GRANTED.

25 [4] The Court notes both the Liu and Ojeda Declarations refer to exhibits which do not
appear to be attached or filed with the Court.  Nevertheless, as set forth below, the
26 declarations alone appear to be sufficient evidence of the dates each grievance was
filed and responded to and Plaintiff does not dispute the accuracy of the dates or the
27 contents of the documents.

28 [5] The Court refers to the pages of the Opposition and its supporting documents as
though they were consecutively paginated.

1   Opposition, Plaintiff (1) claims the OOA failed to respond to his third level appeal

2   regarding the July 2018 incident in a timely manner, thus rendering his administrative

3   remedies "effectively unavailable"; and (2) concedes administrative remedies regarding

4   the November 2018 incident had not been exhausted at the time of filing the

5   Complaint, but argues the Court should allow his claim to proceed for the sake of

6   "judicial economy".  Id. at 3-5.

7          On March 16, 2020, Defendants filed a Reply arguing Plaintiff's claims were

8   unexhausted until he received the third level decisions on July 9, 2019, and August 1,

9   2019, respectively.  Dkt. 62, Reply at 3.

10         On April 21, 2020, the Court issued a Report and Recommendation that

11  Defendants' Motion be granted in part and denied in part, dismissing Claim Two and

12  defendant Rosales without prejudice.  Dkt. 63.

13         On May 21, 2020, Defendants filed Objections to the original Report and

14  Recommendation.  Dkt. 66.

15         The Motion thus stands submitted and ready for decision.[6]  The Court issues

16  the instant Final Report and Recommendation addressing Defendants' Objections in

17  footnotes 8, 11, 13, and 14 below.

18  ///

19  ///

20  ///

21  ———————————————

22  [6] Plaintiff also contends Defendants did not respond to his request for discovery regarding exhaustion of his claims.  Dkt. 61, Opp. at 1-2.  In support of the Reply, Defendants submit the Declaration of Deputy Attorney General K. Jung, stating she received and responded to Plaintiff's discovery request.  Dkt. 62, Reply at 2;

23  Declaration of K. Jung.  While it appears Plaintiff has not received Defendants'

24  responses, Plaintiff was previously granted an opportunity to conduct discovery, dkt. 58, and filed his Opposition without requesting a further extension of time to

25  complete such discovery.  Hence, to the extent Plaintiff is now opposing the Motion on the grounds he has not received discovery responses, Plaintiff cannot assert missed

26  discovery opportunities in light of his failure to file a motion pursuant to Federal Rule of Civil Procedure 56(d) "identify[ing] by affidavit the specific facts that further

27  discovery would reveal, and explain why those facts would preclude summary judgment."  Hupp v. San Diego Cty., No. 3:12-CV-00492-GPC, 2014 WL 347472, at

28  *4 (S.D. Cal. Jan. 30, 2014) (citing Tatum v. City and Cty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006)).

1          III.

2          **LEGAL STANDARD**

3          Summary judgment is appropriate if there is no genuine issue as to any material

4    fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A

5    "material" fact is one which might affect the outcome of the case under the applicable

6    law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.

7    2d 202 (1986).  A dispute about a material fact is genuine if a reasonable jury could

8    return a verdict for the non-moving party.  Id.

9          The moving party bears the initial burden of demonstrating the absence of a

10   genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct.

11   2548, 91 L. Ed. 2d 265 (1986).  The moving party has no burden, however, to negate

12   or disprove matters on which the non-moving party will have the burden of proof at

13   trial.  Id. at 325.  The moving party need only point out to the court there is an

14   absence of evidence to support the non-moving party's case.  Id.

15         The burden then shifts to the non-moving party to "designate 'specific facts

16   showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P.

17   56(e)).  The non-moving party can "no longer can rely on allegations alone, however

18   plausible they may be."  Lopez v. Pac. Mar. Ass'n, 657 F.3d 762, 768 (9th Cir. 2011)

19   (citation omitted); see also Estate of Tucker ex rel. Tucker v. Interscope Records, 515

20   F.3d 1019, 1033 (9th Cir. 2008); Nelson v. Pima Community Coll., 83 F.3d 1075,

21   1081-82 (9th Cir. 1996).  Rather, a "party opposing summary judgment must present

22   some significant probative evidence tending to support the complaint."  Bias v.

23   Moynihan, 508 F.3d 1212, 1222 (9th Cir. 2007) (citation and internal quotation marks

24   omitted).  If a plaintiff fails "to present any evidence to support" a claim, summary

25   judgment in favor of the defendant is appropriate.  Id.

26         An affidavit or declaration may be used to support or oppose a motion for

27   summary judgment, provided it is "made on personal knowledge, set[s] out facts that

28   would be admissible in evidence, and show[s] that the affiant or declarant is

5

1   competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  In addition,

2   pursuant to Central District Local Rule 56-3, the Court assumes the material facts as

3   claimed and adequately supported by the moving party are admitted to exist without

4   controversy.[7]

5          In deciding a motion for summary judgment, the evidence is viewed in the light

6   most favorable to the non-moving party, and all justifiable inferences are to be drawn

7   in its favor.  Anderson, 477 U.S. at 255.  Moreover, "[c]redibility determinations, the

8   weighing of the evidence, and the drawing of legitimate inferences from the facts are

9   jury functions, not those of a judge [when] he [or she] is ruling on a motion for

10  summary judgment."  Id.; see Berry v. Baca, 379 F.3d 764, 769 (9th Cir. 2004).

11                                           **IV.**

12                                      **DISCUSSION**

13  **A.      THE PRISON LITIGATION REFORM ACT OF 1996**

14         As part of the Prison Litigation Reform Act of 1996 ("PLRA"), Congress

15  amended and strengthened the requirement that prisoners pursuing claims under

16  Section 1983 and other federal statutes must first exhaust administrative remedies.

17  Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).  As

18  amended, 42 U.S.C. § 1997e(a) ("Section 1997e(a)") provides: "No action shall be

19  brought with respect to prison conditions under section 1983 of this title, or any other

20  Federal law, by a prisoner confined in any jail, prison, or other correctional facility

21  until such administrative remedies as are available are exhausted."  42 U.S.C. §

22  1997e(a).

23

24  [7] Central District Local Rule 56-3 provides:

25         In determining any motion for summary judgment or partial
       summary judgment, the Court may assume that the material facts as
26     claimed and adequately supported by the moving party are admitted to
       exist without controversy except to the extent that such material facts
27     are (a) included in the "Statement of Genuine Disputes" and (b)
       controverted by declaration or other written evidence filed in opposition
28     to the motion.

### 1.    PLRA's Administrative Exhaustion Requirement

The PLRA requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint, even if the prisoner seeks money damages and such relief is not available under the administrative process.  See Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); see also Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

In addition, Section "1997e(a) requires exhaustion before the filing of a complaint" and is not satisfied by exhaustion during the course of the litigation. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Ngo, 548 U.S. at 93-94.  "[P]roper exhaustion" under the PLRA requires that a prisoner comply with the prison's "deadlines and other critical procedural rules" as a precondition to bringing suit in federal court.  See Ngo, 548 U.S. at 90.  If a prisoner has not exhausted his available administrative remedies before filing his federal suit, the court must dismiss the action without prejudice to allow plaintiff to file a new action after he has completed his administrative remedies.  See McKinney, 311 F.3d at 1200-01; see also Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010) (holding a claim involving conduct after the date of the original complaint and alleged for the first time in an amended complaint is exhausted if the administrative remedies are exhausted before the filing of the amended complaint).

### 2.    The Parties' Burdens in Proving Exhaustion Or Failure To Exhaust

Section 1997e(a) creates an affirmative defense and, therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549

1   U.S. at 216.  Rather, the issue of non-exhaustion is properly raised in a motion for

2   summary judgment.  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

3   A defendant has the burden of raising and proving a plaintiff's failure to exhaust.  Id.

4   If a defendant meets this burden, the burden shifts to the plaintiff to come forward

5   with evidence showing administrative remedies were "effectively unavailable."  Id.;

6   Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010).

7        **3.**     **When Administrative Remedies Are "Effectively Unavailable"**

8        The United States Supreme Court has held administrative remedies are

9   "effectively unavailable" when prison administrators "thwart inmates from taking

10  advantage of a grievance process through machination, misrepresentation, or

11  intimidation."  Ross v. Blake, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016).  Prison

12  administrators "thwart inmates from taking advantage of a grievance process," thus

13  rendering administrative remedies "effectively unavailable," when they improperly fail

14  to process an inmate's grievance within required deadlines.[8]  Andres v. Marshall, 867

15  F.3d 1076, 1078-79 (9th Cir. 2017) (discussing consensus among circuits that failure to

16  respond to a grievance within time limits renders administrative remedies "effectively

17  unavailable"); see also Mills v. Mitchell, 792 F. App'x 511, 512 (9th Cir. 2020)[9]

18  ("[Prison administrators'] repeated failure to meet the statutorily required deadlines . .

19  . made remedies effectively unavailable . . .").

20  **B.**     **CALIFORNIA'S INMATE GRIEVANCE PROCESS**

21       The State of California provides its prisoners and parolees the right to appeal

22  administratively "any policy, decision, action, condition, or omission by the

23  department or its staff that the inmate or parolee can demonstrate as having a material

24

25  [8] In their Objections, Defendants argue the "Ninth Circuit has refused to excuse the exhaustion requirement for an untimely response to an Appeal."  Dkt. 66 at 7-8.
26  Defendants' only citation to the Ninth Circuit, however, is an unpublished case from 2002.  Id. (citing Baird v. Terhune, 43 F. App'x 132 (9th Cir. 2002)).  Unpublished
27  cases issued before January 1, 2007 are not persuasive.  See U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

28  [9] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

1   adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, §

2   3084.1(a) (2019) (as revised in 2016).[10]

3         **1.    California's Three Levels of Appeal**

4         At the time of the events giving rise to the present action, California prisoners

5   were required to proceed through three separate levels of appeal to exhaust the

6   administrative appeal process: (1) first level appeal to the prison's appeals coordinator;

7   (2) second level appeal to the "hiring authority or designee;" and (3) third level appeal

8   to the Secretary of the CDCR. See id. § 3084.7. A final decision from the Secretary's

9   level of review – that is, the third level – exhausts the prisoner's administrative

10  remedies. See id. § 3084.7(d)(3) (2019) (as revised in 2016).

11        **2.    Time Limit For Administrative Response To Third Level Appeal**

12        The Secretary is required to respond to third level appeals within 60 working

13  days. Cal. Code Regs. tit. 15, § 3084.8(c) (2019) (as revised in 2016). Responses to

14  third level appeals are exempt from this time limit only in exceptional circumstances.

15  See id. § 3084.8(d) (2019) (as revised in 2016).

16  **C.    ANALYSIS**

17        **1.    Plaintiff Has Shown His Administrative Remedies Were**

18              **Effectively Unavailable For Claim One Related To The July 2018**

19              **Incident**

20        In Claim One, Plaintiff alleges that in July 2018, after a cell door closed on his

21  left leg, defendant Lizama struck Plaintiff in the face, defendants Hanks and Romo

22  Munoz slammed Plaintiff's head onto the concrete, and defendants Pressnell,

23  Hernandez, and Wingfield kicked Plaintiff's back and legs, thereby violating his

24  Eighth Amendment rights by use of excessive force. SUF 3-4; Dkt. 12, FAC at 1, 3-5.

25  As a result, Plaintiff required hospitalization and was left confined to a wheelchair,

26  partially paralyzed. Id.

27

28  [10] Sections 3084.1-3084.9 were ordered repealed on March 25, 2020. See Cal. Code
    Regs. tit. 15, §§ 3084.1-3084.9. These sections, however, remain effective through
    June 1, 2020, and thus govern here. Id.

1
### a. Additional Background

2    The undisputed evidence establishes that on July 30, 2018, Plaintiff filed a

3 grievance regarding Claim One, which bypassed the first level of review and

4 proceeded directly to the second level appeal.  SUF 7; Ojeda Decl. ¶ 13.  On

5 September 11, 2018, the CSP-LAC appeals office issued a second level response

6 finding CSP-LAC staff did not violate policy.  Ojeda Decl. ¶ 13.  Plaintiff submitted

7 his third level appeal which was received by the OOA on October 1, 2018.  Liu Decl.

8 ¶ 7.

9    On January 8, 2019, Plaintiff filed the Complaint.  SUF 2; Dkt. 1.  On February

10 22, 2019, the OOA issued a letter to Plaintiff notifying him that his appeal had been

11 routed back to the CSP-LAC appeals office for further action.  Liu Decl. ¶ 7.  On

12 March 20, 2019, the CSP-LAC appeals office issued an amended second level

13 response finding staff did not violate CDCR policy.  Ojeda Decl. ¶ 13.  Plaintiff

14 resubmitted his third level appeal and received a third level decision on July 9, 2019.

15 Liu Decl. ¶ 7.

16
### b. Analysis

17    Here, Plaintiff filed the Complaint on January 8, 2019, 65 working days after

18 the OOA received his initial third level appeal on October 1, 2018.  See SUF 2; Dkt.

19 1.  At the time Plaintiff filed his Complaint, Defendants had not responded or

20 rejected his initial third level appeal.  In fact, Plaintiff did not receive a response to his

21 initial third level appeal until 31 working days after he filed his Complaint and did not

22 receive a third level decision until 126 working days after he filed his Complaint.[11]

23

24 [11] In their Objections, Defendants argue "[i]t is not reasonable to conclude that prison officials thwarted administrative remedies when they complied with the appeal regulations and kept the inmate reasonably informed of the status of his

25 administrative remedies."  Dkt. 66 at 10.  Plaintiff, however, did not receive any response to his third level appeal until *after* he filed the original Complaint.

26 Defendants appear to disregard the fact that the February 22, 2018 notice to Plaintiff was issued 31 working days *after* he filed the Complaint and 36 working days *after* a

27 response was due (i.e. December 31, 2018, 60 working days after October 1, 2018). Hence, at the time Plaintiff filed the Complaint, he had no way of knowing the OOA

28 intended to respond.  Moreover, Plaintiff was under no obligation to dismiss his Complaint and re-file it based on Defendants' belated response as Defendants suggest

10

1   This failure of Defendants to respond or reject Plaintiff's initial third level appeal

2   within the 60-day time limit set forth in section 3084.8(c)[12] rendered Plaintiff's

3   administrative remedies "effectively unavailable." See Mills, 792 F. App'x at 512.[13]

4          Defendants do not dispute that the OOA failed to provide Plaintiff with a

5   response to his initial third level appeal within sixty days.  Defendants nonetheless

6   argue Plaintiff has not exhausted his administrative remedies because he filed the

7   Complaint before receiving the third level decision.  Dkt. 49, Motion at 8.  In support

8   of this argument, Defendants claim Plaintiff improperly relied on sections

9   3084.9(a)(5)(A)(6) and 3084.8(e) in assuming a lack of timely response was equivalent

10  to a denial of his third level appeal.  Dkt. 62, Reply at 3 (citing Opp. at 5).  Section

11  3084.9(a)(5)(A)(6) explicitly allows inmates who have submitted grievances related to

12  sexual misconduct to treat an absence of a timely response, at any level, as a denial.

13  Section 3084.9(a)(5)(A)(6) (2019) (as revised in 2016).  Section 3084.8(e) requires that

14  inmates be provided with an explanation if they are not provided with a timely

15  response to their appeal, but explicitly exempts third level appeals.  Cal. Code Regs.

16  tit. 15, § 3084.8(e) (2019) (as revised in 2016).

17         The appeal at issue is a third level appeal which does not contain any

18  allegations of sexual misconduct.  Section 3084.9(a)(5)(A)(6) is, therefore, not

19  applicable.  In addition, while section 3084.8(e) exempts Defendants from providing

20  an explanation of the reasons for delay at the third level of review, it does not

21  explicitly exempt Defendants from complying with the 60-day time limit set forth in

22  section 3084.8(c), nor do Defendants cite any regulation or case law to support their

23
24  in footnote 2 of their Objections.  See Andres, 867 F.3d at 1079 (holding exhaustion is measured at the time the action is filed).

25  [12] All future code section references are to Title 15 of the California Code of Regulations.

26  [13] In their Objections, Defendants argue this case is distinguishable from Mills
27  because here, the OOA sent Plaintiff a "proper notice" advising him the OOA had received the third level appeal and was a "form of response . . . demonstrating the availability of administrative remedies."  Dkt. 66 at 5.  This argument, however, once
28  again disregards the fact that the February 22, 2018 notice to Plaintiff was not issued until *after* he filed the Complaint.

1    assertion that they are otherwise exempt.  See Cal. Code Regs. tit. 15, § 3084.8(c)

2    (2019) (as revised in 2016).

3        Hence, Plaintiff's administrative remedies were "effectively unavailable" once

4    the OOA failed to either respond or reject Defendant's third level appeal within the

5    60-day time limit set forth in section 3084.8(c), regardless of the fact that the OOA

6    eventually explained the delay and responded.  See Mills, 792 F. App'x at 512.  To

7    conclude otherwise could allow exploitation of the exhaustion requirement by prison

8    officials who indefinitely delay their response to grievances.  See Andres, 867 F.3d at

9    1078-79[14]; see also Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e

10   refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the

11   exhaustion requirement through indefinite delay in responding to grievances."

12   (alterations and quotation marks omitted)).

13       Accordingly, considering the evidence viewed in the light most favorable to

14   Plaintiff, Defendants have not met their burden of showing the absence of a genuine

15   issue of material fact regarding Plaintiff's failure to exhaust his administrative

16   remedies for his claim regarding the July 2018 incident.  See Celotex, 477 U.S. at 325.

17   ///

18   ///

19   ///

20   ///

21   [14] In their Objections, Defendants argue this case is distinguishable from Andres

22   because "[i]n the present matter, prison officials actually processed the Appeal . . .
     albeit after sixty (60) days of initial receipt at the Third Level of Review."  Dkt. 66 at

23   6.  Defendants appear to focus on the fact that in Andres the plaintiff had filed a
     separate state habeas action in which the state court found the defendants improperly

24   failed to timely process the plaintiff's grievance.  Id.  Defendants' argument, however,
     relies on their inaccurate claim that the grievance in the instant case was timely

25   processed, which it was not.  In the instant case and Andres, the grievances were
     ultimately "processed" and fully exhausted *after* the plaintiffs had filed the operative

26   complaints.  Regardless of whether the grievances were ultimately processed, the
     Ninth Circuit in Andres held exhaustion must be measured at the time the action is

27   filed.  Andres, 867 F.3d at 1079.  In both Andres and the instant case, on the date
     plaintiffs filed their respective complaints, their administrative remedies were

28   unavailable because the time to respond to their grievances had passed and there was
     no indication they were being processed.

1    **2.    Plaintiff Has Not Exhausted His Administrative Remedies Or**

2    **Shown His Administrative Remedies Were Effectively Unavailable**

3    **For Claim Two Related To The November 2018 Incident**

4    In Claim Two, Plaintiff alleges that in November 2018, Defendants Rosales,

5    Pressnell, Hernandez, Lizama, and Wingfield each grabbed Plaintiff out of his

6    wheelchair by the chains attached to his handcuffs and held Plaintiff, with his arms

7    through the cell door and the full weight of his body bearing on his handcuffs, for at

8    least thirty seconds before pushing Plaintiff back into his wheelchair, thereby violating

9    his Eighth Amendment rights by use of excessive force.  SUF 5; Dkt. 12, FAC at 5.

10    *a.    Additional Background*

11    The undisputed evidence establishes Plaintiff filed a grievance regarding Claim

12    Two on November 20, 2018, which bypassed the first level of review and proceeded

13    directly to the second level appeal.  SUF 10; Ojeda Decl. ¶ 14.  On December 21,

14    2018, the CSP-LAC appeals office issued a second level response.  Ojeda Decl. ¶ 14.

15    On January 22, 2019, the OOA received Plaintiff's third level appeal.  Liu Decl. ¶ 8;

16    SUF 1.  On August 1, 2019, Plaintiff received a third level decision.  SUF 11; Liu

17    Decl. ¶ 8.

18    *b.    Analysis*

19    Here, Plaintiff admits he had not yet submitted his grievance regarding this

20    claim for third level review at this time he filed the Complaint.  See dkt. 61, Opp. at 7.

21    Plaintiff, therefore, concedes he failed to exhaust his administrative remedies for

22    Claim Two prior to filing the Complaint on January 8, 2019.  Id.; McKinney, 311 F.3d

23    at 1199; cf. Rhodes, 621 F.3d at 1004.

24    Plaintiff argues, however, that the Court should deny Defendants' Motion and

25    allow Claim Two to proceed because it "relates" back to his other claim and for the

26    sake of "judicial economy".  Dkt. 61, Opp. At 7.  Plaintiff does not cite, nor has the

27    Court found, any authority applying the concept of "relation back" to other claims in

28

1    the context of the PLRA's exhaustion requirement.[15]  Rather, where a plaintiff has

2    filed a "mixed complaint," consisting of both unexhausted and exhausted claims, the

3    unexhausted claims must be dismissed.  Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th

4    Cir. 2005) (holding unexhausted claims "can be treated independently").  Moreover,

5    the Ninth Circuit has contemplated this exhaustion requirement will result in "the

6    expenditure of additional resources on part of the parties and the court," but

7    nonetheless concluded Congress "made a policy judgment that this concern is

8    outweighed by the advantages of requiring exhaustion prior to the filing of suit."

9    McKinney, 311 F.3d at 1199-1200.  The Court, therefore, lacks discretion to consider

10   Claim Two in this action because it was not exhausted at the time the Complaint was

11   filed.  See McKinney, 311 F.3d at 1199 (noting the PLRA's "exhaustion requirement

12   is mandatory").

13          Accordingly, considering the evidence viewed in the light most favorable to

14   Plaintiff, Defendants have met their burden of showing the absence of a genuine issue

15   of material fact regarding Plaintiff's failure to exhaust his administrative remedies for

16   his claim regarding the November 2018 incident.  See Celotex, 477 U.S. at 325.

## V.

## **RECOMMENDATION**

19          IT IS THEREFORE RECOMMENDED the Court issue an Order: (1)

20   accepting this Final Report and Recommendation; (2) DENYING Defendants'

21   Motion for Summary Judgment on Claim One; (3) GRANTING Defendants' Motion

22

23

_____

24   [15] While the concept of "relation back" does not appear to apply to exhaustion, the
Court notes it recently denied Defendants' Motion to Sever, finding Claim Two was
25   properly, permissively joined pursuant to Federal Rules of Civil Procedure 18 and 20.
See dkt. 48.  Claim Two, however, involves an independent claim of excessive force
26   on a distinct date involving at least one distinct defendant such that ordinary rules of
claim preclusion would not prevent Plaintiff from bringing the claim regarding the
27   November 2018 incident in a separate action.  See Lira, 427 F.3d at 1174 (noting the
"PLRA causes of action joined in a single action may concern entirely independent
28   underlying factual circumstances, so that ordinary rules of claim preclusion would not
apply later").

1    for Summary Judgment on Claim Two; and (4) DISMISSING Claim Two without

2    prejudice.[16]

3

4    Dated: June 08, 2020

5                                                          HONORABLE KENLY KIYA KATO
                                                           United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
      _____
      [16] Accordingly, defendant Rosales should be dismissed from the action.

15